Filed 12/19/13  In re S.T. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.T., a Person Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY HUMAN SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>V.F.,<br><br>　　　Defendant and Appellant. | A138447<br><br>(San Mateo County<br>　Super. Ct. No. JV81064) |

　　　Appellant V.F., mother of S.T., appeals from an order, dated February 25, 2013, and filed on March 1, 2013, in which the juvenile court terminated its jurisdiction, and awarded sole legal and physical custody of the child to father and granted mother supervised visitation.[1]  Mother challenges those portions of the order's visitation directives requiring supervision of visits and limiting visits to twice monthly.  We conclude mother's contentions do not require reversal, and accordingly, we affirm.

---

[1]　　Mother's April 15, 2013, notice of appeal also seeks review of findings and orders of June 11, 2012, August 6, 2012, September 26, 2012, September 27, 2012, November 28, 2012, December 27, 2012, January 11, 2013, and February 20, 2013.  Even assuming those findings and orders are properly before us, mother seeks no affirmative relief regarding them.  Accordingly, we dismiss the appeals from those findings and orders as abandoned.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In February 2011, the San Mateo County Human Services Agency (the agency) filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (j) (abuse of sibling), seeking to have then three-year-old S.T. be declared a dependent of the juvenile court. At that time S.T. was living with mother and four half-siblings. The petition alleged the child was at risk of physical harm and serious emotional damage based on mother's physical and emotional abuse of one half-sibling and the physical abuse of another half-sibling. The juvenile court declared the child a dependent of the court and the agency was directed to provide reunification services to mother. The child and half-siblings were placed in the home of the maternal grandparents and mother was granted weekly supervised visits with the children.

By May 2011, the agency had located the child's biological father, who filed a family court request for visits and started to pay child support and provide medical coverage for the child. In an interview with the agency social worker, father reported he had had a previous relationship with mother that lasted two or three years, and he had regularly visited the child from the age of four months old until March 2010 when mother no longer allowed visitation. Father wanted custody of the child if the child was not returned to mother and he asked for reunification services. In October 2011, the juvenile court elevated father's status to that of presumed father, and granted him reunification services and supervised visits of a minimum of two hours with the agency having discretion to allow unsupervised visits.

By the time of the 12-month review hearing, which was conducted over the course of several days, mother had completed her court-ordered mandated services. The child was participating in therapy with both parents. Father had unsupervised visits with the child, and the agency social worker recommended extended overnight visits at the home of father and his girlfriend. Mother had weekly supervised visits, and the agency social worker recommended a change to unsupervised visits.

---

[2]     We recite only those facts as are necessary to give context to the issue raised on this appeal.

In April, 2012, the juvenile court placed the child with father with family maintenance services but the child was allowed to stay with the maternal grandparents and half-siblings during weekdays. Mother was granted unsupervised weekly visits in the community. By the time of the June 2012, status review hearing, although mother had participated in all of her court-ordered services, including anger management and parent education, both mother's therapist and the child's therapist agreed that additional time was needed before reunification could be recommended as mother had not met her individual therapeutic goals and mother and the child needed continued work in dyad therapy. The juvenile court allowed the child one weekly overnight unsupervised visit with mother.

However, at the August 6, 2012, status review hearing, counsel for the agency and the child's counsel requested that visits between the child and mother be limited to supervised visits based on concerns about mother's behavior during an unsupervised visit and concerns about the child's change in behavior toward her father, which prompted the child's court appointed special advocate (CASA) to recommend that the child resume therapy. The juvenile court directed that mother's visits were to be limited to supervised visits based on the reasons expressed by counsel. The court acknowledged that mother was working very hard at addressing her anger issues, but the child's best interest required a return to supervised visits.

On August 12, 2012, the child moved to father's home on a full time basis. Shortly thereafter, mother started to complain about father's care of the child, alleging that the child smelled dirty and had body odor during supervised visits. The agency social worker investigated the allegations and determined all of the other persons that came into contact with the child (CASA, agency social worker, child's teacher, community workers who supervised visits), reported that the child was well dressed and did not have a bad smell. At a September 27, 2012, hearing, mother stipulated to termination of her reunification services as to the child. Mother also did not contest an order continuing weekly supervised visits with the child. The court scheduled a hearing

for the possible termination of its jurisdiction and the issuance of exit orders of custody and visitation.

The juvenile court held hearings regarding the possible termination of its jurisdiction and the issuance of exit orders of custody and visitation on November 28, 2012, December 27, 2012, January 11, 2013, February 20, 2013, and February 25, 2013. The five-year-old child had then been living with father and his girlfriend and their two children (child's half-siblings) for several months, and mother was participating in weekly supervised visits with the child. The agency social worker recommended that father have sole legal and physical custody of the child if the court was inclined to terminate jurisdiction. As to mother's visitation, at the initial hearing on November 28, 2012, the agency social worker recommended a continuation of weekly supervised visits because mother's unfounded complaints about father's care of the child had escalated. The agency social worker was concerned that mother's allegations "will not stop" and put the child "totally in the middle" of "a battle of the mother against the father." At the last hearing on February 25, 2013, the agency social worker recommended that mother's supervised visits be reduced from weekly to twice monthly. By that time mother's complaints about father's care of the child had escalated to being made on an almost weekly basis "always com[ing] after the visits," resulting in investigations of each allegation by the agency social worker and CPS. The allegations were not confirmed by either the persons who came in contact with the child or an examination of the child and age-appropriate questioning of the child about father's care. The agency social worker opined that by decreasing supervised visits, the child would be exposed to fewer investigations (including examinations and questioning about father's care) because the child "constantly must have the feeling that something is wrong with the father."

At the conclusion of the hearings, the juvenile court awarded father sole legal and physical custody of the child after terminating its jurisdiction and family maintenance services for father as no longer necessary. In so ruling, the court found: "[The agency social worker's] testimony throughout has been credible. The Court, as it related to the testimony of Mother however, finds that her testimony was not credible. I did not believe

4

the mother's explanation for a number of issues that came up, and I do not find her testimony to be credible." "The [agency] has consistently praised the father's care of [the child], noting that [the child] has become more and more comfortable with him and in his home; his supervision is appropriate, and he cares well for [the child]; and he has consistently put [the child's] best interest first. [¶] He has allowed [the child] to remain at [the] grandparents' home when he could have had full custody. And he has continued visits even as family members were criticizing his care. Since transitioning to [the] father's care, [the child] has done well in school. [The child] appears happy, well cared for, according to social workers, [the child's] teachers at school, and [the child's] CASA. [¶] . . . [T]he CASA report . . . clearly indicates that [the child] is very happy to see [the] father, and CASA also recommends that Father have sole legal and sole physical custody. [¶] As it relates to Mother's credibility, the Court is very concerned about the most recent incident wherein [the child] was in a bathroom for 16 minutes with the mother, and the . . . parties connected to that visit . . . are knocking on the door. Mother's explanation concerning why she didn't answer the door was just not credible. [¶] Mother's complaints have not been corroborated. She has consistently complained on various different points that [the child's] hygiene is not good; that has not been corroborated; that [the child] smells bad; that has not been corroborated; that [the child] is dirty; that has not been corroborated. . . . Mother is taking these things that children experience and is creating them into big issues such that CPS has to conduct an investigation, and [the child] has to be subjected to examination. And that is a clear indication of Mother's lack of judgment; or put differently, her focus on ensuring [the child] is not placed in the custody, sole custody, of [the] father. [¶] Concerns about how [the child] puts . . . clothes on. [The child] is not even six years old . . . . [I]t's not something that should be criticized. And Mother has done that with [the child.] . . . . [¶] Mother has also contended that [the child] hasn't been showering. Father indicates [the child] showers every day. This most recent allegation about scratches caused the social worker to go [to the child's] home to find [the child]. She had to lift [the child's] chin up and see these two tiny scratches. Once again, another investigation that had to be conducted because of Mother's allegations

5

concerning [the child] being, quote, abused. [¶] It's very unfortunate that [the child] has been subjected to these continued inspections based on Mother's allegations. And, as noted, Mother makes these allegations later. [¶] . . . If Mother sees something, she can step aside and tell somebody right there so that there's corroboration of her observations. [¶] Now, while it's true as it relates to the scratches, they did exist. They were very tiny. And Father explains in the report that [the child] was playing with [a] baby [half-sibling]. Mother's credibility is definitely questioned by this Court. Her judgment is questioned. It is clear to the Court that it would not be in [the child's] best interest [for mother] to have joint legal and joint physical custody. [¶] I think th[e] evidence is overwhelming on that issue."

In addressing the issue of mother's visits with the child, the juvenile court found, "the Court is aware that [the child] loves [the] mother . . . [and] that Mother loves her [child]. However, the Court needs to make orders that are in [the child's] best interest, at the same time taking into consideration Mother's relationship with her [child]. [¶] However, as noted, the investigations recently have become nearly weekly based on Mother's complaints about this or that, which I have delineated on the record and are clearly noted in the reports. And it is not in [the child's] best interest, in the Court's view, because of this to have weekly supervised visitation. And, therefore, as a factual basis, all of the information in the reports, the Mother's recent incidents and the testimony, the Court is going to reduce supervised visitation from weekly to twice monthly with Mother. [¶] The Court is also going to order that those visits be supervised . . . by . . . someone [who] needs to be there in earshot to ensure that what Mother is saying to [the child] is appropriate. The reason for this is the Court is concerned about the most recent incident where Mother was in a restroom for 16 minutes with [the child]. People are knocking on the door, asking her to come out because the [visitation] is supervised. Mother does not. And then when [the child] comes out, [the child] . . .wants to go to [the] mother's home. [¶] I think logic and reason dictates that Mother is trying to influence [the child]. And it is not in [the child's] best interest to be torn in this matter. Mother is thinking of herself and not thinking of her [child]. I think it's clear based on

6

the complaints and the allegations and what [the child] has had to go through. So I hope the record is clear as to the Court's basis for this reduction, regrettably, from weekly supervision to twice monthly. [¶] The Court does not enjoy doing this because the Court understands the relationship between mother and [the child] here. But it is in [the child's] best interest because I'm concerned about Mother's behavior and her judgment. And so that is the basis for the Court's decision."

## DISCUSSION

We review the juvenile court's visitation directives for an abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452.) We agree with mother that an abuse of discretion is not only found when the juvenile court's decision exceeds all bounds of reason. Nevertheless, " '[b]road deference must be shown to the [juvenile court] judge. The reviewing court should interfere only " 'if [it] finds that under all the evidence, viewed most favorably in support of the [juvenile] court's action, no judge could reasonably have made the order that he did.'. . ." ' [Citations.] . . . The juvenile court's opportunity to observe the witnesses and generally get 'the feel of the case' warrants a high degree of appellate court deference." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) Thus, to reverse the visitation directives, we would have to conclude the juvenile court's discretion could be exercised in only one way, compelling a finding in favor of mother as a matter of law. We cannot so conclude in this case for the reasons we now discuss.

Because the juvenile court "has a special responsibility to the child as *parens patriae*," when issuing a visitation order on termination of its jurisdiction, it "must look at the totality of the child's circumstances" (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31), and "may consider the parent's past conduct as well as present circumstances" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917). Here, the court's explanation for its visitation directives reveals its "clear continuing concerns about [mother's] effect, even in supervised visits, on [the child's] well being." (*In re Chantal S.* (1996) 13 Cal.4th 196, 204.) Contrary to mother's contention, the juvenile court "was entitled to find the social worker's opinion[s] credible and give great weight to her assessment." (*In re Cole C.,*

7

*supra*, 174 Cal.App.4th at p. 918.) We see no merit to mother's related argument that there is other evidence that requires us to reverse the juvenile court's order. As an appellate court, "[w]e have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) Instead, "we must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact." (*Id.* at p. 53.) Mother's argument "effectively asks us to reweigh the evidence. We decline to do so." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 812.)

## DISPOSITION

The appeals from the findings and orders of June 11, 2012, August 6, 2012, September 26, 2012, September 27, 2012, November 28, 2012, December 27, 2012, January 11, 2013, and February 20, 2013, are dismissed. The order dated February 25, 2013, and filed on March 1, 2013, is affirmed.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.